UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LONG ISLAND NEUROSURGICAL
ASSOCIATES, P.C.,

|  |  |
|---|---|
| Plaintiff, | Civil Action No.: |
|  | 2:18-cv-03963-JMA-AYS |
| -against- |  |

EMPIRE BLUE CROSS BLUE SHIELD, and
DIVISION 1181 A.T.U. NEW YORK WELFARE
FUND,

Defendants.
-----------------------------------------------------------------X

## AMENDED COMPLAINT

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiff, Long Island Neurosurgical Associates, P.C. ("LINA"), brings this action against Defendant Empire Blue Cross Blue Shield ("Empire"), and Division 1181 A.T.U. New York Welfare Fund (the "Fund"), arising out of surgery performed for patient BK, who received health care coverage from Empire.  The Fund is a self-funded Plan, meaning it paid the costs of health care for members out of its own assets.  The Fund's Board of Trustees is the Plan Administrator.  Empire is the Claims Administrator.

1.      This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Defendants' under-reimbursement to Plaintiff for surgical services rendered to patient BK.

2.      Patient BK presented with a skull base lesion, probable encephalocele (sac-like protrusions of the brain and the membranes that cover it through openings in the skull) with cerebrospinal fluid leakage.

3.      He was admitted to Long Island Jewish Medical Center in New Hyde Park, Long Island for surgery on July 8, 2016 for a resection of a skull base lesion; repair of the cerebrospinal

fluid fistula; reconstruction of the anterior skull base with bone graft, fascial graft, and mucosal graft; and the insertion of a lumbar drain and cisternogram.

4.      After the surgery, LINA submitted an invoice to Empire for $137,830.50.  Empire paid LINA a total of $3,381.96, representing a substantial under-reimbursement.  The Patient is responsible for the remaining charges.

## JURISDICTION

5.      The Court has subject matter jurisdiction over Plaintiff's ERISA claims under 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over the parties because Plaintiff submit to the jurisdiction of this Court, and the Defendants Empire and the Fund systematically and continuously conduct business in the State of New York, and otherwise have minimum contacts with the State of New York sufficient to establish personal jurisdiction over each of them.

7.      Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Empire resides, is found, has an agent, and transacts business in the Eastern District, (b) Empire conducts a substantial amount of business in the Eastern District, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the Eastern District, including from offices in the Eastern District (including Hempstead and Melville); and (c) the Fund transacts business in the Eastern District.

## PARTIES

8.      Plaintiff LINA is a professional corporation with offices at 410 Lakeville Road, Suite 204, New Hyde Park, New York 11042.  It is engaged in the practice of neurosurgery, including pediatric neurosurgery.  Patient BK's neurosurgeon, Dr. Steven Schneider, is affiliated with LINA.

9.     Defendant Empire Blue Cross Blue Shield a/k/a Empire HealthChoice Assurance, Inc. is a health care insurance company located in New York City, offers BCBS-branded health care insurance in 28 counties in New York and contiguous counties (including Nassau and Suffolk Counties), and is a subsidiary of Anthem, Inc., with offices at120 Monument Circle, Indianapolis, IN 46204.

10.     Defendant Division 1181 A.T.U. New York Welfare Fund is a self-funded employee welfare benefit plan.  The Board of Trustees is the Plan Sponsor and Plan Administrator of the Fund.  The Fund's offices are located at 101-49 Woodhaven Blvd. Ozone Park, New York, 11416.

## FACTUAL ALLEGATIONS

11.     On July 8, 2016, Patient BK, a patient of Dr. Steven J. Schneider of LINA and a Plan Participant of the Fund, underwent surgery to resect a skull base lesion; repair a cerebrospinal fluid fistula; reconstruct his anterior skull base with bone graft, fascial graft, and mucosal graft; and insert a lumbar drain and cisternogram.  He had presented with a skull base lesion, probable encephalocele (sac-like protrusions of the brain and the membranes that cover it through openings in the skull) with cerebrospinal fluid leakage.  The surgery confirmed the existence of an encephalocele.

12.     The Patient's surgery was a covered service under the terms of the Fund.

13.     After the surgery LINA submitted an invoice to Empire on a CMS-1500 form, as required, for $137,830.50 representing the following CPT codes, for which Empire determined the Paid Amount was $3,381.96 as follows:

| CPT Code | Amount Billed | Paid Amount |
|----------|---------------|-------------|
| 61580-82 | $21,200.00 | $364.63 |
| 61600-22 | $51,000.00 | $1,967.65 |
| 61618-22 | $50,297.50 | $597.24 |
| 61782 | $10,000.00 | $177.21 |

| 62272 | $1,633.00 | $94.95 |
| 20926 | $3,700.00 | $180.29 |

14.     Empire gave a host of incorrect, unreasonable, and invalid purported reasons for its under-reimbursements for this surgery, including: "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

15.     Because LINA is an out-of-network provider, there is no fee schedule.  There is no "legislated fee arrangement."  These statements were false and misleading.

16.     Pursuant to the terms of the Plan, the "Allowed Charge" for an out-of-Network Provider is the "lesser of the amount that the Fund would have paid an Empire Blue Cross/Blue Shield Preferred Provider for the procedure or the provider's actual charge for the procedure."

17.     Other than neurosurgeons affiliated with LINA, there are no neurosurgeons with Dr. Schneider's skill and expertise to perform the complex surgery that was performed for Patient BK.  There were no neurosurgeons in Empire's network who could perform this surgery.

18.     Since Empire could not have identified any Preferred Provider in its network on whom to base the amount to pay Plaintiff, Plaintiff is entitled to its actual charge for each of the billed procedures under the express terms of the Fund's terms.

19.     This is entirely consistent with NY Ins. Law § 4804(a), which states:

**Access to Specialty Care**

If an insurer offering a managed care product determines that it does not have a health care provider in the in-network benefits portion of its network with appropriate training and experience to meet the particular health care needs of an insured, the insurer shall make a referral to an appropriate provider, pursuant to a treatment plan approved by the insurer in consultation with the primary care provider, the non-participating provider and the insured or the insured's designee, at no additional cost to the insured beyond what the insured would otherwise pay for services received within the network.

20.     Alternatively, Empire should have offered Dr. Schneider and LINA a Single Case Agreement.  Such an agreement is common among insurers and out-of-network providers where the insurer does not have a provider in its network which can provide the required procedures or services for its member.  It is a one-time agreement negotiated with the provider and does not encompass services beyond that provided to the single member.  As such, it is a negotiated exception to the rates set out in the Certificate of Insurance governing out-of-network reimbursement or a reimbursement for urgent medical care.  By under-reimbursing Plaintiff, Defendants left Patient BK exposed to LINA for the unreimbursed medical expenses rendered to him.

21.     LINA, through its billing company, Business Dynamics ("BD"), appealed Empire's under-reimbursement determination.  It sent an appeal to Empire on November 1, 2016 requesting that additional payment be made, and noted that Empire provided no basis to support its reimbursement determination.

22.     Empire responded directly to Dr. Schneider on November 19, 2016. It stated: "After further review of the above claim, we have determined that the charges for the services rendered have been processed correctly." There was no explanation or rationale for how Empire processed the claim or what plan terms it followed.  Empire did not send the Plan's language.

23.     LINA sent a second-level appeal on December 6, 2016 and again requested the source of the reimbursement determination.

24.     Empire responded to this second-level appeal on December 23, 2016 as follows: "After further review of the above claim, we have determined that the charges for the services rendered have been processed correctly." This claim was paid at the Maximum Allowed Amount as the provider is non participating with the member's contract. . . .No additional reimbursement is possible.  The member is responsible for any remaining balance."

25.     On February 24, 2017, LINA's outside counsel sent an appeal letter to Empire requesting that it reprocess the claim.

26.     Empire did not respond to this appeal.

27.     On October 16, 2017, LINA's outside counsel sent a second appeal letter to Empire requesting that it reprocess the claim.

28.     Empire responded on November 6, 2017, concluding that "no additional payment is due."

29.     On August 31, 2017 LINA's outside counsel sent an appeal letter to the Fund requesting that it reprocess the claim.

30.     On December 4, 2017, the Fund responded through counsel that it needed an assignment of benefits of authorized representative form to proceed.  Nonetheless, the Fund stated that under the Fund terms, LINA was entitled to what the Fund would have paid an in-network provider, which is what the Fund paid.

31.     On January 18, 2018, LINA's outside counsel emailed the assignment of benefits to Fund counsel.

32.     Fund counsel did not respond for months and LINA's counsel followed up with emails on February 18, 2018.

33.     On March 22, 2018, at the request of Fund counsel, Dr. Steven Schneider wrote a letter to be forwarded to the Fund's Board of Trustees noting that the patient was made aware that LINA was out-of-network.  He also described the patient's medical condition and the surgery:

> The type of problem the patient was suffering was a leak of cerebrospinal fluid.  In layman's terms, the covering of the brain was incompetent and unable of maintaining a barrier of cerebrospinal fluid.  This allowed cerebrospinal fluid to leak from the patient's nose.  This presents a potentially life-threatening scenario, which could lead to meningitis and even death.  This type of problem, although at time it may be chronic in nature, it can at any time, at a moment's notice and without warning, become fatal.

The patient required a unique approach to the leakage. The defect was in the anterior skull base, which required us to approach it through a skull base approach. This required us to explore this area and to close it in a specialized fashion. This required specialized techniques, which are minimally invasive, which was something I pioneered on Long Island in the early 1990s. This type of minimally invasive skull base surgery requires a great deal of experience and special skill, which requires an individual such as myself who has developed these techniques.

34. LINA's outside counsel learned that the Fund's Board of Trustees was to meet on May 21, 2018 to adjudicate this appeal. On April 25, 2018 Dr. Steven Schneider submitted a supplemental letter to be forwarded to the Fund's Board of Trustees, which stated:

The medical services rendered were very complex. I have the skills, expertise and experience to perform this very difficult surgery. The surgeons at LINA are amongst the only such surgeons with a specific multidisciplinary team with privileges in the Hospital with this expertise. Second, this surgery was medically necessary and pre-authorization was obtained.

35. On May 15, 2018 LINA's outside counsel sent an email to the Fund's counsel requesting him to confirm that the Fund has all the necessary documents so it can review LINA's claim during the May 21, 2018 Board of Trustees meeting.

36. On May 22, 2018, LINA's outside counsel sent an email to the Fund's counsel asking for the outcome of the appeal.

37. On May 30, 2018, the Fund's counsel sent a letter stating that the Fund's Board of Trustees reviewed the appeal and denied it. It determined that LINA was entitled to the lesser of what LINA actually charged or what the Fund would have paid an Empire in-network provider for the procedure, and stated that this is what LINA received.

38. The Fund then stated that it "erroneously" paid $3,381.96 more on the claim than it should and demanded that this amount be recouped, with interest. In a remarkable bullying tactic, it threatened to file a counterclaim should the Fund be sued.

39. Plaintiff exhausted his administrative remedies.

7

40.     Empire violated ERISA when it provided incorrect, unreasonable and invalid purported reasons for its under-reimbursements in its Explanation of Benefits ("EOB") and failed to provide any reason for its determination in its appeal response.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

41.     Empire provided none of the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

42.     Under ERISA, when an insurer fails to follow the procedures set out in the Plan SPD as here, the claimant is deemed to have exhausted his administrative remedies.

8

43.     Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

44.     LINA received an Assignment of Insurance Benefits from Patient BK's parent and

an Appointment as Authorized Representative. It states in relevant part:

**Assignment of Insurance Benefits—Appointment as Legal Authorized Representative**

I hereby assign all applicable health insurance benefits and all rights and obligations that I and my dependents have under my health plan to Long Island Neurosurgical Associates, P.C. and their affiliated revenue management firm (collectively, hereinafter, "My Authorized Representatives") and I appoint them as my authorized representative with the power to:

- File medical claims, appeals and grievances with the health plan

- File appeals and grievances with the health plan

- Institute any necessary litigation and/or complaints against my health plan naming me as plaintiff in such lawsuits and actions if necessary . . .

- Discuss or divulge any of my personal health information or that of my dependents with any third party including the health plan

Patient BK's parent further designated LINA as his Authorized Representative under

29 C.F.R. § 2560.5031(b)(4).

## COUNT I

## CLAIM AGAINST EMPIRE FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

45.     As the claims administrator for the Employer, Empire is obligated to pay benefits to

Plan participants and beneficiaries in accordance to the terms of the Plan, and in accordance with

ERISA.

46.    Empire violated its legal obligations under this ERISA-governed plan when it under-reimbursed Plaintiff for pediatric neurosurgical services provided to Patient BK, in violation of the terms of the Certificate of Insurance and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and for failing to provide the Certificate of Insurance to Plaintiff.

47.    Plaintiff seek unpaid benefits and statutory interest back to the date Plaintiff's claims were originally submitted to Empire. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Empire.

**COUNT II**

**CLAIM AGAINST DIVISION 1181 A.T.U. NEW YORK
WELFARE FUND MEDICAL PLAN FOR UNPAID BENEFITS
UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA**

48.    As the Plan Administrator and Plan Sponsor for the Fund, the Fund is obligated to pay benefits to Plan participants and beneficiaries in accordance to the terms of the Plan, and in accordance with ERISA.

49.    The Fund violated its legal obligations under this ERISA-governed plan when, through its Claims Administrator, Empire, it under-reimbursed Plaintiff for the surgical services provided to the Patient, a Plan beneficiary, in violation of the terms of the SPD and therefore in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and by failing to provide the SPD to Plaintiff.

50.    Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiff's claim was originally submitted. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against the Employer.

**WHEREFORE**, Plaintiff demands judgment in its favor against Empire as follows:

(a)    Ordering Empire to recalculate and issue unpaid benefits to the Plaintiff;

(b)    Ordering declaratory relief;

        (c)       Awarding Plaintiff the costs and disbursements of this action, including

reasonable attorneys' fees, costs and expenses in amounts to be determined by the Court;

        (d)       Awarding prejudgment interest; and

        (e)        Granting such other and further relief as is just and proper.

Dated:  September 24, 2018

                          NAN GEIST FABER, P.C.

                          By: /s/ Nan Geist Faber
                          996 Dartmouth Lane
                          Woodmere, NY 11598
                          T. (516) 526-2456
                          nfaber@nangeistfaber.com

                          Counsel to Long Island Neurosurgical
                          Associates, P.C.

                          /s/ Robert J. Axelrod
                          AXELROD LLP
                          830 Third Avenue, 5th floor
                          New York, NY 10022
                          (646) 448-5263
                          rjaxelrod@axelrodllp.com

                          Counsel to Nan Geist Faber, P.C.

cc: Counsel of Record (via ECF)