UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
-----------------------------------------------------------------X  
LONG ISLAND NEUROSURGICAL  
ASSOCIATES, P.C.,  

                Plaintiff,                    Civil Action No.:  
                                                   2:18-cv-03963-JMA-AYS  

      v.  

EMPIRE BLUE CROSS BLUE SHIELD and  
DIVISION 1181 A.T.U. NEW YORK  
WELFARE FUND,  

                Defendants.  
-----------------------------------------------------------------X  

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 3

ARGUMENT .......................................................................................................................... 7

    I.    DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT SHOULD BE DENIED ................................................................................................................. 7

        A.    Standard of Review ................................................................................................ 7

        B.    The Amended Complaint States a Claim against Empire ................................................ 8

        C.    LINA Does Not Demand Compensatory Damages; Consequently, Nothing Should be Stricken from the Amended Complaint ................................................................. 11

        D.    The Court Should Not Dismiss Count II of the Amended Complaint ........................... 12

CONCLUSION ..................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 8

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018).................................................................. 11

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
2011 U.S. Dist. LEXIS 75433 (N.D. Cal. July 13, 2011).............................................................. 11

*Menaker v. C.D.*, 2018 U.D. Dist. LEXIS 187377 (E.D.N.Y. Nov. 1, 2018) ................................ 8

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015) ............... 11

*Nyame v. Bronx Leb. Hosp. Ctr.*, 2010 U.S. Dist. LEXIS 33949 (S.D.N.Y. Mar. 31, 2010) ....... 11

*Prof'l Orthopaedics Assocs. v. 1199SEIU Nat'l Ben. Fund*, 697 F. App'x 39 (2d Cir. 2017) ..... 11

*Pruter v. Local 210's Pension Tr. Fund.*,
2016 U.S. Dist. LEXIS 30499 (S.D.N.Y. Feb. 8, 2016),
*rev'd on other grounds*, 858 F.3d 753 (2d Cir. 2017).................................................................... 11

*Rahul Shah v. Blue Cross Blue Shield of Mich.*,
2018 U.S. Dist. LEXIS 78948 (D.N.J. May 10, 2018) ................................................................. 11

**Statutes**

§ 1132(a)(1)(B) ............................................................................................................................ 11

NY Ins. Law § 4804(a) ....................................................................................................... 8, 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 7, 8

**Regulations**

§ 502(a)(1)(B) .............................................................................................................................. 11

Section 502(a) of ERISA ............................................................................................................. 12

Plaintiff Long Island Neurosurgical Associates, P.C. ("LINA" or "Plaintiff"), hereby files its Opposition to Defendant Empire Blue Cross Blue Shield's ("Empire" or "Defendant") and Division 1181 A.T.U. New York Welfare Fund's (the "Plan") Motions to Dismiss the Amended Complaint ("Amended Complaint"). Patient BK was at the time of the surgery a Beneficiary of the Plan, a self-funded plan in which Empire was the claims administrator. Patient BK was a patient of LINA. For the reasons set forth below, the Court should deny Defendants' motions to dismiss the Amended Complaint.

## INTRODUCTION

This is an action under ERISA concerning Empire's substantial under-reimbursement of LINA's claims for neurosurgical services provided by LINA.[1] The case was originally filed in state court and was removed by Empire on July 10, 2018 to the United States District Court, Eastern District New York based on Federal question jurisdiction.

On July 8, 2016, Patient BK, a patient of Steven J. Schneider, M.D., of LINA, underwent urgent neurosurgery to resect a skull base legion, repair a cerebrospinal fluid fistula, reconstruct

---

[1] In an *ad hominem* attack in the first page of its brief, Empire charges that "Plaintiff has made it a business practice of using this Court as a claims adjuster, filing boiler-plate complaints without anything more than a hope that some basis underlying its claims exist." It is ironic that in accusing LINA of filing boiler-plate complaints, Empire's argument is a word-for-word repeat of its argument in its other brief before this Court in Civil Action No. 2:18-cv-04229-JMS-SIL.
 Putting aside the fact that the present Amended Complaint, like the others cited, are not "boiler-plate" but carefully crafted and alleged, LINA should be commended, not ridiculed, for doing what the majority of out-of-network providers have failed to do: stand up for itself in the face of insurer intransigence.
 As for Empire ridiculing LINA for "using this Court" to file this and other ERISA actions against it, had Empire not violated the Plan terms in under-reimbursing LINA (as the "claims adjuster") and had the Plan not upheld its determination on appeal LINA would not be here. It is here only because ERISA explicitly provides federal judicial review for adverse benefit determinations by health insurers such as Empire, and there is no numerical limit to the number of cases a plaintiff may commence no matter what Empire may believe. In fact, this is set out in Patient BK's Plan at 61: "Enforce Your Rights. If you have a claim for benefits which is denied or ignored in whole or part, you may file suit in a state or federal court." Genovese Decl., Exh. A.

3

the anterior skull base with a bone graft, fascial graft and mucosal graft, insert a lumbar drain and perform a cisternogram (examination of spinal fluid flow). Patient BK had an encephalocele (a sack like protrusion of the brain and the membranes that cover the brain through an opening in the skull), with cerebrospinal leakage. Am. Compl. ¶ 11. This was, as Dr. Schneider later informed the Plan Board of Trustees, "a potentially life-threatening scenario" which could become fatal "at a moment's notice." Am. Compl. ¶ 33.

After the neurosurgery, LINA billed a total of $137,830.50. Empire paid $3,381.96. LINA's billing company appealed this reimbursement as insufficiently low and outside the Plan terms. Am. Compl. ¶ 13, 21.

Empire represented in its Explanation of Benefits that LINA's "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement." Am. Compl. ¶ 14. However, because LINA was an out-of-network provider, there was no fee schedule and no contracted or legislated fee arrangement. There was also no "Maximum" Allowable Amount in the Plan.

Under the Plan terms, the "Allowed Charge" for an out-of-network provider is the "lesser of the amount that the Fund would have paid an Empire Blue Cross/Blue Shield Preferred Provider for the procedure or the provider's actual charge for the procedure." Am. Compl. ¶ 16.[2] This means the Plan promised to pay the in-network rate or LINA's full billed rate, whichever was less.

---

[2] This definition appears at page 18 of the Plan, concerning surgery and major medical expenses, which is relevant here, and differs from what appears to be a general definition at page 1. Under the doctrine of *generalia specialibus non derogant*, specific terms must prevail over general terms.
  In its brief, Empire points to the general definition as the operative provision, ignoring that the Plan's Board of Trustees held that the specific definition at page 18 of the Plan applied to LINA's neurosurgical procedures in this case. *See* Am. Compl. ¶ 37.

4

The Amended Complaint alleges that the Plan could not have paid the in-network rate for these neurosurgical procedures because its claims administrator, Empire, had no neurosurgeons in its network in 2016 in Nassau County with Dr. Schneider's skill and expertise and with surgical privileges at Patient BK's hospital to perform the type of skull base surgery required for Patient BK. This was especially complicated neurosurgery, indicated by modifier -22 on two of the billed CPT codes. Am. Compl. ¶ 16.

Since Empire could not have identified the in-network rate in this case, under the terms of the Plan it was required to have reimbursed LINA its billed amount (minus any deductible and co-pay amount). Am. Compl. ¶ 18.[3] Empire might have avoided this outcome by negotiating a lower amount through a Single Case Agreement – a common contract between insurer and out-of-network provider negotiated for a single set of procedures on one plan member. Am. Compl. ¶ 20. Yet, Empire did nothing and should be held accountable for its inaction.

Empire makes two irrelevant statements in its Statement of Facts. It points out (in bold) that Plan members are told to "verify coverage with the Fund Office." However, whether Patient BK or the Patient's Plan Participant did so or not did not affect any coverage decision on the part of the Plan or Empire; it is irrelevant to this case. Similarly, Empire states in bold and all-caps that the Plan requires precertification for certain types of admissions and procedures. Again, whether the Plan Participant obtained precertification (LINA obtained preapproval) was irrelevant because neither the Plan nor Empire denied coverage on this basis. The issue in this case is the

---

[3] In any event, it is extraordinarily unlikely that $3,381.96 was the total 2016 in-network rate for the six neurosurgical procedures Dr. Schneider performed, such that LINA was not even paid the promised in-network rate. How Empire actually reimbursed LINA – whether by Medicare rates or some other methodology, must await discovery.

5

amount of reimbursement based on the terms of the Plan, not Plan coverage, since the procedures were covered.

LINA, through its billing company, filed appeals of the under-reimbursement on November 1, 2016. Am. Compl. ¶ 21. Empire responded directly to Dr. Schneider on November 19, 2016, stating that the "charges for the services rendered have been processed correctly." There was no explanation or rationale for how Empire processed the claim or what Plan terms it followed. Am. Compl. ¶ 22.

LINA sent a second-level appeal to Empire on December 6, 2016. Empire responded on December 23, 2016: "This claim was paid at the Maximum Allowed Amount as the provider is non participating with the member's contract." Am. Compl. ¶ 24.[4]

On August 31, 2017, LINA's outside counsel sent an appeal letter to the Plan requesting that it reprocess the claim. On December 30, 2017, the Plan responded through counsel that LINA was entitled to what the Plan would have paid an in-network provider and that this was what was paid. Am. Compl. ¶¶ 29-30.[5]

On March 22, 2018, at the request of Plan counsel, Dr. Schneider of LINA wrote a letter to the Plan's Board of Trustees describing Patient BK's medical condition. He noted that the patient's leakage of cerebrospinal fluid "presented a life-threatening scenario, which could lead to meningitis and even death." Am. Compl. ¶ 33. This confirmed that the July 8, 2016 neurosurgery was performed on an urgent basis.

---

[4] Since the Plan did not have a Maximum Allowed Amount term (which is a different reimbursement methodology called for in other plans), this statement concedes that Empire's reimbursement of LINA's neurosurgery was in violation of the terms of the Plan.

[5] This and subsequent representations by the Plan directly contradict Empire's statement on December 23, 2016.

Dr. Schneider also confirmed the deeply complex nature of this neurosurgery and that he had developed the surgical techniques to perform it: "The patient required a unique approach to the leakage. The defect was in the anterior skull base. . . This required specialized techniques, which are minimally invasive, which was something I pioneered on Long Island in the early 1990s. This type of minimally invasive skull base surgery requires a great deal of experience and special skill, which requires an individual such as myself who had developed these techniques." Am. Compl. ¶ 33.

On May 30, 2018, the Plan's outside counsel sent a letter stating that the Plan's Board of Trustees denied LINA's appeal and determined that LINA was entitled to the lesser of what LINA actually charged or what the Plan would have paid an in-network provider, which is what LINA received. Am. Compl. ¶ 37.

Having represented that it paid the correct amount under the terms of the Plan, the Board of Trustees then stated that it overpaid and demanded that $3,381.96 be recouped with interest. In a bullying tactic, the Plan's counsel threatened to file a counterclaim should the Plan be sued. Am. Compl. ¶ 38. (As of the date of the filing of this brief, this threatened litigation appears to have been a bluff, but the recoupment demand remains live.)

LINA thereby exhausted its administrative remedies.

## ARGUMENT

### I. DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT SHOULD BE DENIED

#### A. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether facts have been alleged in more than a conclusory manner and provides the defendant a fair understanding of what the plaintiff's allegations are and the legal basis for recovery. A claim for relief must be plausible

7

when a plaintiff pleads facts permitting the court to draw a reasonable inference that the defendant is liable for the alleged misconduct -- not that plaintiff has proven these facts or rebutted defendant's defenses or factual arguments. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Menaker v. C.D.*, 2018 U.S. Dist. LEXIS 187377 (E.D.N.Y. Nov. 1, 2018), at *5-*6. The time to proffer evidence is at summary judgment, and the time to adjudicate disputed material facts is at trial.

### B. The Amended Complaint States a Claim against Empire

Defendants do not contend that the Amended Complaint fails to allege exhaustion of administrative remedies, that LINA lacks standing because of an anti-assignment provision, or that the benefits at issue were not covered under the Plan. Rather, in contending that LINA fails to state a claim under Fed. R. Civ. P. 12(b)(6), Empire states: "Plaintiff does not reference a *single* provision of the Plan that has been allegedly violated. Nor does the Amended Complaint contain factual allegations sufficient to demonstrate that there was an underpayment for any medical services, as required by the Second Circuit. Instead, the Amended Complaint merely alleges in a conclusory fashion that Plaintiff, an out-of-network provider, was 'under-reimbursed' without pleading any facts demonstrating that additional reimbursements are warranted under the express terms of the Patients' [sic] Plan." (emphasis in original). Empire Br. at 8.

Let us take Empire's contentions one at a time and compare them to what the Amended Complaint actually alleges.

| **Empire's Contention** | **Amended Complaint's Allegations** | **Conclusion** |
|---|---|---|
| "Plaintiff does not reference a *single* provision of the Plan that has been allegedly violated." | "Pursuant to the terms of the Plan, the "Allowed Charge" for an out-of-network provider is the "lesser of the amount that the Fund would have paid an Empire Blue Cross/Blue Shield Preferred Provider for the procedure or the | This boilerplate contention is false. The Amended Complaint specifically and explicitly references Plan provisions – more than one – that |

8

| | | |
|---|---|---|
| | provider's actual charge for the procedure." Am. Compl. ¶ 16.<br><br>NY Ins. Law § 4804(a) Access to Specialty Care, ¶ 34, incorporated into the Plan. Am. Compl. ¶ 19.<br><br>¶ 27 Manner and Content of Notification of Benefit Determination. Am. Compl. ¶ 40. | Empire has allegedly violated in this case. |
| "Nor does the Amended Complaint contain factual allegations sufficient to demonstrate that there was an underpayment for any medical services, as required by the Second Circuit." | "After the surgery, LINA submitted an invoice to Empire on a CMS-1500 form, as required, for $137,830.50, representing the following CPT codes, for which Empire determined the Paid amount was $3,381.96." Am. Compl. ¶ 13. The Amended Complaint goes on to allege the precise CPT codes billed, the Billed Amounts, and the Paid Amounts.<br><br>"Other than neurosurgeons affiliated with LINA, there were no neurosurgeons with Dr. Schneider's skill and expertise to perform the complex surgery that was performed for Patient BK." Am. Compl. ¶ 17.<br><br>"Empire should have determined that it did not have an appropriate provider in its network [consistent with NY Ins. Law § 4804(a)] and made a referral to the only appropriate provider, Dr. Schneider. It should have paid LINA the in-network rate for these procedures, which would have resulted in patient BK incurring no additional costs other than the co-pay and deductible an insured | This boilerplate contention is also false. The Amended Complaint alleges the specific amount that was under-reimbursed.<br><br>The Plan could not have paid the in-network rate because there was no in-network rate to pay based on the complexity of the surgical procedures performed on this patient. Two of the CPT codes were billed with modifiers -22, representing extra complexity. If Empire ignored this modifier, it violated federal coding standards.<br><br>Because there was no in-network rate to |

9

|  | would be liable to pay for in-network services." ¶ 35. | pay, pursuant to the terms of the Plan, LINA should have been paid its billed amount (minus deductibles and co-pay amounts). Even if the in-network rate is used, the Amended Complaint alleges that this rate is improperly low under the Plan. Even if there were an in-network neurosurgeon, he or she would not have received $3,381.96 for specialized skull base neurosurgery.<br><br>Empire should have applied NY Ins. Law § 4804(a), which was incorporated by reference into all plans, but failed to do so. |
|---|---|---|
| "Instead, the Amended Complaint merely alleges in a conclusory fashion that Plaintiff, an out-of-network provider, was 'under-reimbursed' without pleading any facts demonstrating that additional reimbursements are warranted under the express terms of the Patients' [sic] Plan." | ¶¶ 16-18, 33-34 plead facts demonstrating that additional reimbursement is warranted under the terms of Patient BK's Plan. There is nothing "conclusory" about the allegations of any of these paragraphs. | Nowhere in the Amended Complaint does LINA allege that it was simply "under-reimbursed." Even in ¶ 44 LINA alleges "under-reimbursed . . . in violation of the terms of the Certificate of Insurance and in violation of ERISA . . ." These Plan terms are referenced in the Amended Complaint. |

10

Defendant's motion to dismiss on these grounds should be denied.[6]

### C. LINA Does Not Demand Compensatory Damages; Consequently, Nothing Should be Stricken from the Amended Complaint

In a curious paragraph-long boilerplate section of its brief, Empire peremptorily states that Plaintiff "seeks compensatory damages" and that such relief must be stricken. Empire does not point to any place in the Amended Complaint – in Count I or the Wherefore clause – where this is true. This is for good reason. Plaintiff does not seek compensatory damages. ERISA does not permit such damages. It seeks "unpaid benefits" under § 502(a)(1)(B), statutory interest, attorneys' fees and costs (Counts I and II), an order for Empire to recalculate and issue unpaid benefits to Plaintiff, and declaratory relief (Wherefore Clause).

This type of boilerplate briefing on the part of Empire is both ironic given Empire's rhetoric about LINA's so-called "boiler-plate complaints" (which turn out to be demonstrably false), and a waste of the Court's time.

---

[6] Defendant's citations are inapposite. In *Prof'l Orthopaedics Assocs. v. 1199SEIU Nat'l Ben. Fund*, 697 F. App'x 39 (2d Cir. 2017); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 U.S. Dist. LEXIS 47181 (D.N.J. Mar. 22, 2018); *Pruter v. Local 210's Pension Tr. Fund.*, 2016 U.S. Dist. LEXIS 30499 (S.D.N.Y. Feb. 8, 2016), *rev'd on other grounds*, 858 F.3d 753 (2d Cir. 2017); and *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, 2011 U.S. Dist. LEXIS 75433 (N.D. Cal. July 13, 2011), the plaintiffs failed to cite the plan terms that entitled them to ERISA benefits, unlike here. Empire cherry-picks the quotation in *Rahul Shah v. Blue Cross Blue Shield of Mich.*, 2018 U.S. Dist. LEXIS 78948 (D.N.J. May 10, 2018), omitting the court's statements that the plaintiff's demand for full billed charge fly in the face of his allegations that the patient owed deductibles and co-pays under the Plan, and that it reimbursed 70% of certain of his services and did not cover others at all. In *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015), the court did not affirm the dismissal of a § 1132(a)(1)(B) claim; it affirmed a dismissal of a Mental Parity Act claim. It upheld § 1132(a)(1)(B) claims against United as the claims administrator. In *Nyame v. Bronx Leb. Hosp. Ctr.*, 2010 U.S. Dist. LEXIS 33949 (S.D.N.Y. Mar. 31, 2010), the court dismissed the complaint because the plaintiff failed to allege with more than a conclusory allegation that he was covered by the hospital's severance plan, that he was a participant of the plan, and failed to plead the amount of severance benefits to which he was entitled. By contrast, LINA pled each of the elements of the § 502(a)(1)(B) claim here.

### D. The Court Should Not Dismiss Count II of the Amended Complaint

Defendant Division 1181 A.T.U. New York Welfare Fund filed a one-page brief incorporating by reference the brief in support of Empire's motion to dismiss. However, the Amended Complaint alleges Count II against this Defendant under ERISA that is separate and apart from the claim against Empire. Empire functions as the Plan's Claims Administrator. The Plan is the Plan Sponsor and Plan Administrator of the Plan. It is obligated, under the express terms of the Plan, to pay benefits to Plan participants and beneficiaries (such as Patient BK) in accordance with ERISA. Am. Compl. ¶¶ 10, 48. The Plan is self-funded, meaning that it is liable for all medical claims itself. Empire does not insure these claims.

The Plan Board of Trustees adjudicates appeals. Genovese Decl., Exh. A at 49-51. It notifies claimants whether appeals are granted or denied. Under the Plan, the Board of Trustees, when it denies an appeal, must provide the specific reason(s) for the denial; the reference to specific Plan provisions on which the denial was based; must state that the claimant has access to all documents, records, and other information relevant to the benefit claim, and must state that the claimant may commence an action under section 502(a) of ERISA. *Id.* at 50. When the Plan Board of Trustees' denials in this case failed to contain this required language, this is actionable under ERISA against the Plan.

The Plan also states that the "Board of Trustees has the power and sole discretion to interpret, apply, construe and amend the provisions of the Plan and make all factual determinations regarding the construction, interpretation and application of the Plan. The decision of the Board of Trustees is final and binding." This power and discretion make the Board of Trustees a fiduciary under the Plan.

When LINA appealed to the Plan's Board of Trustees, its counsel demanded that the exact amount it had paid, $3,381.96, be recouped with interest, such that LINA, as the price for appealing, would be paid nothing. The Plan's counsel also stated that should LINA commence an action in court under ERISA – which was its statutory right – it would bring a counterclaim. Thus, the Plan and its counsel attempted to threaten and bully LINA into surrendering its ERISA rights. There is no allegation in the Amended Complaint that Empire had anything to do with this misconduct. Count II against the Plan, but not Count I against Empire, will also focus on this aspect of the allegations.

As a result, Count II is a significantly different claim from Count I. Since the Plan did not move to dismiss Count II, it should not be dismissed.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendants' Motions to Dismiss be denied.

Date:   February 25, 2019

/s/Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

Counsel to Nan Geist Faber, P.C.

/s/ Nan Geist Faber, Esq.
NAN GEIST FABER, P.C.
996 Dartmouth Lane
Woodmere, NY 11598
(516) 526-2456
nfaber@nangeistfaber.com

Attorney for Long Island
Neurosurgical Associates, P.C.