```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LONG ISLAND NEUROLOGICAL
ASSOCIATES, P.C.,

                              Plaintiff,            REPORT AND
                                                    RECOMMENDATION
              -against-                             CV 18-3963 (JMA)(AYS)

EMPIRE BLUE CROSS BLUE SHIELD, and
DIVISION 1181 A.T.U. NEW YORK WELFARE
FUND,

                              Defendants.
----------------------------------------------------------X
```

**SHIELDS, Magistrate Judge:**

This is an action commenced pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") by Plaintiff, Long Island Neurosurgical Associates, P.C. ("Plaintiff" or "LINA"), against Defendants Empire Blue Cross Blue Shield ("Blue Cross") and Division 1181 A.T.U. New York Welfare Fund (the "Fund") (collectively "Defendants"). (See Am. Compl., Docket Entry, herein ("DE"), [8].) Plaintiff is a group of neurosurgeons seeking payment for services rendered to a patient covered by an ERISA employee benefit insurance plan administered and/or sponsored by Defendants (the "Plan").

Presently before this Court, upon referral by the Honorable Joan M. Azrack for Report and Recommendation are Defendants' motions to dismiss. (See DE [26] (the Blue Cross motion) and DE [27] (the Fund motion) (collectively the "Motions").) The Fund has not submitted separate papers in support of its motion to dismiss. Instead, it relies on the papers submitted by Blue Cross. (See DE [27-1] and DE [30].)

As explained below, the Court agrees that LINA fails to cite to a provision of the Plan that entitles it to payment in full of all charges billed. Therefore, the Court recommends that the

1

Motions be granted to the extent that they seek to dismiss Plaintiff's ERISA claims for full payment. Construing the Amended Complaint broadly, LINA also appears to argue that the amount actually paid by Blue Cross (a fraction of what was billed) was not in accord with the terms of the Plan. The determination of the merits of that claim must await proper judicial review of the full administrative record upon a motion for summary judgment. Finally, LINA also alleges an un-briefed, separate and distinct claim against the Fund. That claim, however, is not clearly pleaded to state a separate claim for relief.  Instead of recommending outright dismissal thereof, it is recommended that Plaintiff be given leave to re-plead (only against the Fund) with respect to that claim.

Accordingly, and for the more detailed reasons set forth below, it is respectfully recommended that the Motions be granted in part and denied in part, with leave to re-plead only as to a claim against the Fund.

## BACKGROUND

I. Facts

The facts set forth below are drawn from Plaintiffs' Amended Complaint, referred to hereinafter simply as the "Complaint."  As required in the context of these motions to dismiss, the factual allegations of the Complaint are accepted as true. Additionally, all reasonable inferences are drawn therefrom in favor of Plaintiff.

A. The Parties and the Surgery

LINA is a professional corporation engaged in the practice of neurosurgery. (DE [8] at ¶ 8.) Blue Cross is a health care insurance company which offers "BCBS-branded health care insurance." (DE [8] at ¶ 9.) The Fund is a self-funded employee welfare benefit plan. (DE [8] at ¶ 10.)

Dr. Steven Schneider is a neurosurgeon affiliated with LINA who performed surgery (the "Surgery") on a patient referred to in the Complaint as "BK." (See DE [8] at ¶¶ 2, 8.) The parties agree that LINA is an "out of network" provider with respect to the terms of the Plan. (DE [8] at ¶ 15.) Plaintiff alleges, and the Court assumes for the purpose of the Motions, that there are "no neurosurgeons with Dr. Schneider's skill and expertise to perform the complex surgery that was performed for patient BK." (DE [8] at ¶ 17.) It is also assumed that there were no neurosurgeons in the Blue Cross network who could perform the Surgery. (Id.)

The Surgery was performed by Dr. Schneider on July 8, 2016. Without going into particular medical terms, the Court describes the Surgery as complex skull surgery. (See DE [8] at ¶¶ 11-12.) There does not appear to be a dispute that while LINA was an out of network provider, the Surgery itself was a procedure covered by the terms of the Plan.

B.   LINA's Request for Payment and the Amount Paid

Following the Surgery, LINA submitted an invoice to Blue Cross for $137,830.50. Amounts billed were attributed to six separate "CPT" (current procedural terminology) codes. The amount paid – $3,381.96 – was vastly less than the amount sought by LINA. While there is a wide gap between amounts billed and those paid, the greatest disparity appears for services attributable to "CPT Code 61618-22." For those services, the difference was between $50,297.50 for the amount billed, and $597.24 for the amount paid. The overall under-reimbursement is alleged to have left the patient exposed to LINA for the full amount billed for the Surgery. (DE [8] at ¶ 20.)

C.   Reasons Asserted for Underpayment and the Terms of the Plan

Plaintiff alleges that Blue Cross gave a "host of incorrect, unreasonable, and invalid purported reasons for its under-reimbursements," including "[c]harge exceeds fee

3

schedule/maximum allowable or contracted/legislated fee arrangement." (DE [8] at ¶ 13.) Plaintiff's claim is based upon its interpretation of the Plan's reference to "allowed" charges. The Court turns next to discuss that term, as well as the Plan's provisions with respect to the payment of out-of-network providers.[1]

The Plan is annexed to the Declaration of Amanda Lyn Genovese, submitted in support of the Blue Cross motion ("Genovese Decl."). (DE [26-2], Ex. A.) It is a document that forms the basis of the Complaint and is properly before the Court in the context of the Motions. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). At issue here is the Plan's provision as to what are deemed "allowable" charges.

The Plan defines "Allowable Charge" as the lowest of: "(1) the amount listed in the Fund's Schedule of Allowances for a given procedure; (2) the usual charge by the health care provider for the same or similar service or supply; (3) the charge that the Fund would pay under an agreement [with an in network provider]; or (4) the health care provider's actual charge. (Genovese Decl., DE [26-2], Ex. A at 1.) With respect to out-of-network providers, the Plan more specifically defines the term "Allowable Charge" as the lesser of what the Plan would have paid an in-network provider (which is set forth as to the categories above), or the actual amount billed. With respect to such providers, the Plan informs participants:

> "If you do not use [an in network provider], the [Plan] will only pay Allowable Charge, which is the lesser of the amount that the Fund would have paid [an in network] Provider for the procedure or the provider's actual charge for the procedure and you will be responsible for the unpaid balance."

---

[1] The Complaint also sets forth all steps taken by LINA to appeal the decision denying full reimbursement. Because Defendants do not argue that there has been any failure to exhaust administrative remedies, the Court assumes, for purposes of this motion, that this matter has reached the appropriate stage for judicial review. Accordingly, it is not necessary to recite the facts, appearing as paragraphs 21-39 in the Complaint, relating to exhaustion.

4

(Genovese Decl., DE [26-2], Ex. A at 16) (emphasis in original).

II.     Plaintiff's Theories for Relief

Briefly stated, Plaintiff claims that because Dr. Schneider was a singular out-of-network surgeon, the Plan has no "maximum allowable" or "legislated fee" that can apply to his work. Therefore, LINA argues that payment under the Plan must default to a position of reimbursement for the full amount billed. In addition to its interpretation of the Plan's provision for payment of providers like Dr. Schneider, LINA also argues that full payment is consistent with Section 4804(a) of the New York Insurance Law ("Section 4804") which states:

> **Access to Specialty Care**
>
> If an insurer offering a managed care product determines that it does not have a health care provider in the in-network benefits portion of its network with appropriate training and experience to meet the particular health care needs of an insured, the insurer shall make a referral to an appropriate provider, pursuant to a treatment plan approved by the insurer in consultation with the primary care provider, the non-participating provider and the insured or the insured's designee, at no additional cost to the insured beyond what the insured would otherwise pay for services received within the network.

N.Y. Ins. L. § 4808(a); DE [8] ¶ 19.

The Complaint also argues, in the alternative, that Blue Cross "should have offered Dr. Schneider and LINA a Single Case Agreement." (DE [8] ¶ 20.) Plaintiff acknowledges that the Plan does not provide for such agreements. Nonetheless, it is alleged that such agreements are commonly offered, one-time agreements reached between insurers and out-of-network providers in cases where the insurer lacks an in-network provider who can perform required procedures for members. Id.

Finally, the Complaint alleges that Defendants have failed to provide Plaintiff with required information when denying full reimbursement, in violation of ERISA regulations. (DE [8] ¶¶ 40-41.)

III.      Prior Proceedings and the Present Motions

LINA commenced this action in New York State court, and it was thereafter removed here on July 7, 2018. (See DE [1].) On August 15, 2018, Blue Cross sought leave to move to dismiss. (DE [5].) In response, Plaintiff sought leave to file an amended complaint. (DE [7].) The presently operative Amended Complaint was filed on September 24, 2018. (DE [8].) Shortly thereafter, on October 9, 2018, Blue Cross again sought leave to move to dismiss. (DE [12].) A pre-motion conference was held on November 27, 2018, (DE [21]), and on December 3, 2018, a briefing schedule was approved.

On March 11, 2019, the Motions were filed. (See DE [26], [27].) On November 6, 2019, counsel were advised that the motions were being referred to this Court for Report and Recommendation. (DE [36].)

## DISCUSSION

I.      Other Litigation Filed By LINA

Before turning to the merits of the Motions, the Court addresses the parties' bickering about the impact of the fact that several similar cases have been filed by LINA in this District. Defendants argue that these other lawsuits raise almost identical arguments to those herein. They characterize the Complaint as "yet another in a series of cases" filed in the past year in which LINA asserts an ERISA claim "seeking an additional payment purportedly owed for services rendered to a patient under the patient's health benefits plan." (DE [26-1] at 1.) Defendants go on to accuse LINA of making it a "business practice" to use the courts "as a claims adjuster, filing complaints without anything more than a hope that some basis underlying its claims exist." Id. Defendants conclude that when LINA's claims "are scrutinized, it becomes clear" that the

6

claims herein are properly dismissed. Id. In opposition to this attack, LINA points out that it has a right to sue in Federal Court (which it undoubtedly does) and that Defendants are also guilty of using the same boilerplate language it uses here in its other cases. (DE [28] at 3 n.1.)

Whatever the characterization of LINA's lawsuits or Defendants' responses thereto, it is clear that this system must be working for the parties, as each case cited (and there are nine referred to in Defendants' memorandum of law) was commenced in 2018 and settled, without any decision on the merits, during 2019. In one of those cases, the parties went so far as to brief a motion to dismiss, but they settled prior to any decision being filed. See Long Island Neurological Assocs, P.C. v. Empire Blue Cross Blue Shield, No. 18-5928 (JMA/AKT) (E.D.N.Y. Oct. 23, 2018), DE [30] (motion to dismiss). This case, however, has not been settled. Lacking any judicial determination, the other lawsuits have no precedential value. Accordingly, the Court makes clear that the decision here is in no way influenced by either parties' characterization of the other's motives. The Court notes, however, that if the parties had devoted more of their respective briefing to discussing case law, instead of relegating case discussion to footnotes, see e.g., DE [26-1] at 3 n.4; DE [28] at 21 n. 8, decision on this matter would have been made clearer to the Court. In any event, the Court turns now to the merits of the motions.

II.     Legal Principles

   A.     Standards on Rule 12(b)(6) Motions to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-20 (2d Cir. 2010).  Facial plausibility is established by pleading factual content sufficient to allow a court to reasonably

7

infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 663. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Id. at 678 (quoting Twombly, 550 U.S. at 555).

The issue in the context of this motion to dismiss is not whether Plaintiff has established a prima facie case as to his claims, but whether it pleads facts in plausible support of the elements thereof. The elements of the prima facie case are considered because they "provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible." Friel v. County of Nassau, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013) (quoting Sommersett v. City of New York, No. 09 Civ. 5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).

B.  Applicable ERISA Standards

A person owed benefits under an ERISA plan may bring a civil suit to recover those benefits pursuant to Section 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B); Halberg v. United Behavioral Health, 408 F. Supp. 3d 118, 132 (E.D.N.Y. 2019). "To prevail under § 502(a)(1)(B), a plaintiff must show that: (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." Guerrero v. FJC Sec. Servs., Inc., 423 F. App'x 14, 2011 WL 1938673, at *16 (2d Cir. May 23, 2011); see also Giordano v. Thompson, 564 F.3d 163, 168 (2d Cir. 2009). With respect to the third element, a claim for denied benefits is stated only if plaintiff can point to a provision of the plan at issue that requires the payment sought. Once such a provision is identified, the Court will construe that term to determine whether plaintiff is entitled to the relief sought. See Professional Orthopaedic Assocs, PA v. 1199 SEIU Nat'l Ben. Fund, 697 F. App'x

39 (2d Cir. 2017); Halberg, 408 F. Supp. 3d at 132 ("To adjudicate" a claim under section 502(a)(1)(B), "a court necessarily must identify the terms of the plan") (citations omitted).

III.  Disposition of the Motions

  A.  The Complaint Should be Dismissed as to Any Claim That LINA is Entitled to Full Reimbursement

Defendants seek dismissal of the Complaint on the ground that Plaintiff fails to point to a provision in the Plan requiring the payment sought. In particular, it is alleged that LINA can show nothing in the Plan that requires full payment (of any amount billed) to an out-of-network provider like Dr. Schneider. Since Plaintiff cites no such provision, Defendants argue that it fails to state a plausible claim for relief under ERISA. Plaintiff counters that it has, indeed, pointed to a particular Plan provision that sets forth allowable charges.

Ironically, all parties point to the same provisions in support of their positions, i.e., the provisions cited above that speak to allowable payments to be made to out-of-network providers. Plaintiff argues that under the circumstances here, these provisions require reimbursement of the full amount billed. According to Plaintiff, it is entitled to this amount because the fees referenced in the Plan (those drawn from fee schedules or fee arrangements with in-network providers) do not exist. This is because, according to LINA, no surgeon existing in the Plan network could have performed the Surgery. Therefore, the argument goes, Blue Cross was required to default to a position of full payment to Dr. Schneider.

Plaintiff's argument finds no support in the Plan. As noted, the Plan refers specifically to the consequences of obtaining medical care from out-of-network providers. There is no question that Dr. Schneider falls into this category. The Plan warns that if an out-of-network provider is used, the Plan will pay only the lesser of what would have been paid to an in-network provider, or the actual amount billed by the out-of-network provider. (Genovese Decl., DE [26-2], Ex. A at

9

16 (emphasis in original)). When referring to the meaning of "Allowable Charge," the Plan also refers to the lowest of three alternatives, which include amounts listed by the Plan (either usual charges, scheduled charges or those pursuant to a fee agreement) or the actual charges billed. (Genovese Decl., DE [26-2], Ex. A at 1.) It also contains the statement that any remaining amount due to the out-of-network provider after Plan-made payments becomes the responsibility of the insured. Id. The Plan's reference to any "remaining" charges due necessarily contemplates payment, at least in some cases, of something less than the full amount billed.

Nowhere does the Plan entitle Plaintiff, or any other out-of-network provider, to full payment based on the allegation that the provider used was the only individual who could perform the services rendered. There is simply no provision in the Plan for payment in full based upon this allegation of singularly available care. Even to the extent that this allegation as to the care provided is true, the terms of the Plan would provide, at most, payment pursuant to a situation where in-network care was not available. That payment would be for an out-of-network provider, which would require payment of the lesser of defined "allowable charges" under the Plan. That payment might be what the Plan determines to be the usual charge for services rendered. It would not be, as Plaintiff argues, whatever amount is actually billed. Plaintiff's argument here, i.e., that there is no fee schedule applicable to Dr. Schneider's care, is explicitly based upon the notion that the services he performed are not within any term of the Plan. On its face, this argument seeks reimbursement in full for services that are not set forth within the Plan, as required to state a claim under ERISA. The argument therefore fails to state a claim under that statute.

Dismissal of its claim for full payment under the terms of the Plan is required by the Second Circuit's decision in Professional Orthopaedic, PA v. 1199 SEIU Nat'l Ben. Fund, 697 F.

App'x 39 (2d Cir. 2017). There, the Second Circuit affirmed the district court's dismissal of the plaintiff's ERISA section 502(a)(1)(B) claim where the complaint failed "to identify any provision in the plan documents requiring the [defendant] to pay such rates." Id. at 41. There, as here, Plaintiff fails to point to a Plan provision that requires the relief sought, i.e., payment in full. Thus, to the extent that LINA argues for full payment of Dr. Schneider's bill, there is no Plan provision providing for any such payment, and the motion to dismiss the claim for full reimbursement should therefore be granted. Accord University Spine Center v. Anthem Blue Cross Blue Shield, No. 17-cv-9108, 2018 WL 3327930, *5 (D.N.J. July 5, 2018).

The same reasoning requires the Court to reject Plaintiff's claim that it should have been offered a "Single Case Agreement." (DE [8] at ¶ 20.) Even Plaintiff concedes that such an offering would be a one-time agreement that is not required to be made, or within the terms of the Plan. Therefore, with respect to any single case agreement, there is no Plan requirement, and consequently, no violation of ERISA.

Finally, the Court must reject Plaintiff's reliance on the New York State Insurance Law quoted above to support its claim for full reimbursement. (See DE [8] ¶ 19.) The statute cited provides that if an insurer determines that it does not have an in-network provider "with appropriate training and experience" to meet the health care needs of an insured, it shall make a referral to an appropriate provider. That referral is to be made "pursuant to a treatment plan" approved by the insurer, the primary care provider and the insured." N.Y. Ins. L. § 4808(a). According to Plaintiff, full payment of its fees would be "consistent" with this law.

The facts pleaded in the Complaint do not allege a violation of this section of the Insurance Law. Nor do they allege that full payment is required by the collaborative process envisioned by the law, which process gives broad discretion to the insurer to determine a plan for

out-of-network care. In short, citation to this statute does not support a claim for full reimbursement to LINA under the circumstances here. Nor does it do anything to change the Court's recommendation to grant the motion to dismiss LINA's claim for full reimbursement.

      B.      <u>The Court Declines to Dismiss Any Claim that the Amount Paid Violated the Plan</u>

Construing the Complaint broadly, as is required in the context of a motion to dismiss, LINA also argues that the Plan was violated because Blue Cross cannot show that the $3,381.96 actually paid was in accord with the terms of the Plan. Thus, in addition to arguing for full payment (which claim is dismissed), Plaintiff also argues that payment of $3,381.96 does not fit within the definition of what was "allowable" under the Plan. Plaintiff argues that determination of this issue must await discovery.

Plaintiff is right that the Court cannot determine, based upon the pleadings alone, how Blue Cross decided to make the $3,381.96 payment. It is wrong, however, in stating that the resolution of this matter must await discovery. Judicial review of ERISA appeals, such as the claim herein, are generally limited to a review of the administrative record. <u>DeFelice v. American Int'l Life Assurance Co. of N.Y.</u>, 112 F.3d 61, 66-67 (2d Cir. 1997); <u>see also</u> <u>Krauss v. Oxford Health Plans, Inc.</u>, 517 F.3d 614, 631 (2d Cir. 2008) (noting that the Second Circuit has "repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, "but which discretion ought not to be exercised in the absence of good cause") (citing <u>Juliano v. Health Maint. Org. of New Jersey, Inc.</u>, 221 F.3d 279, 289 (2d Cir. 2000)) (internal quotation marks and citation omitted); <u>Halberg</u>, 408 F. Supp. 3d at 134-35 (noting "presumption" that judicial review "is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence).

Accordingly, while it is unlikely that discovery will be ordered, determination of whether LINA was properly reimbursed must await review of the entire administrative record in the context of a motion for summary judgment. The Court therefore recommends that the Motions be denied to the extent that they seek dismissal of Plaintiff's claim that the reimbursement received was not in accord with the allowable charges under the terms of the Plan. [2]

C.   Claim for Compensatory Damages

The Motions seek dismissal of Plaintiff's claim for compensatory damages. Plaintiff states that it makes no such claim. (DE [28] at 11.) Accordingly, this branch of the Motions need not be addressed.

IV.   The Fund's Motion to Dismiss

As noted, the Fund has not submitted separate papers in support of its motion to dismiss. Instead, it relies on the papers submitted by Blue Cross. (See DE [27-1] and DE [30].) Review of the Complaint reveals that Plaintiff alleges that the Fund violated ERISA and the terms of the Plan by failing to reimburse Plaintiff in accord with the terms thereof. In this regard, the claims against both Defendants are the same. Thus, to the extent that Plaintiff's claims against the Fund mirror those alleged against Blue Cross, the recommendations of the Court are the same. Any claim for full reimbursement under the Plan should be dismissed, and any claim with respect to underpayment must await summary judgment.

However, in addition to alleging liability for failure to reimburse and for under-reimbursement, LINA also alleges that the Fund is liable under ERISA for "failing to provide the

---

[2]   The Complaint also alleges that Defendants are liable for violation of 29 C.F.R. §2560.503-1(g) for failure to provide appropriate information in connection with the denial of full reimbursement. This claim is not briefed by any party. To the extent that it takes issue with the explanation of benefits in this matter, it can certainly be pursued by Plaintiff when this case moves to the summary judgment stage.

SPD to Plaintiff." (DE [8] at ¶ 49.) The term "SPD" is not defined in the Complaint, although the Court presumes Plaintiff is referring to a "summary plan description" pertaining to the Plan. In any event, the parties have not briefed any issue with respect to the SPD. Additionally, Plaintiff's response to the Motions does not press any theory mentioning the SPD. Therefore, the Court will not discuss this document, or any claim as to whether it was provided or not.

Despite the fact that the mention of the SPD is the only allegation differentiating Plaintiff's claim against Blue Cross from its claim against the Fund, Plaintiff argues, in opposition to the Motions, that its claims against the Fund are different from those alleged against Blue Cross. Specifically, Plaintiff argues that the Complaint seeks redress for the conduct of the Fund's counsel when it "attempted to threaten and bully LINA into surrendering its ERISA rights" by asserting a counterclaim in this matter to recoup the $3,381.96 paid. (DE [28] at 13.) While the conduct of counsel is referred to in the facts section of the Complaint, this claim of bullying is not set forth clearly in the Complaint, and it has not been briefed in the context of the Motions. Yet, Plaintiff argues that it is properly alleged.

Because the basis of any cause of action based upon the conduct alleged is unclear, the Court recommends that any such claim be dismissed, but that Plaintiff be granted leave to amend to properly assert any independent claim it has against the Fund. It is recommended that such leave to amend be exercised within two weeks of a final decision by the District Court as to the Motions.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' Motions to Dismiss, appearing as Docket Entries [26] and [27] herein, be granted in part, and denied in part and that Plaintiff be given leave to amend its claim against Defendant Division 1181 A.T.U.

New York Welfare Fund. Such leave to amend should be granted for a period of fourteen (14) days after the District Court's final decision as to this Report and Recommendation.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated:  March 2, 2020
       Central Islip, New York

                                                                        /s/ Anne Y. Shields
                                                                        Anne Y. Shields